UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN E. HUNTER, | ) | Case No. 3:19CV1977 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE JEFFREY J. HELMICK |
| | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | REPORT AND RECOMMENDATION |

Plaintiff Sean E. Hunter (Hunter or claimant) challenges the final decision of Defendant Commissioner of Social Security (Commissioner) denying his applications for a period of disability, disability insurance benefits (DIB), and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the undersigned recommends that the Commissioner's final decision be affirmed.

I. PROCEDURAL HISTORY

On May 23, 2016, Hunter protectively filed an application for a period of disability and DIB, alleging disability beginning January 19, 2013 (as amended). (R. 9, Transcript (tr)., at 16, 316-322, 345, 349-359). The application was denied initially and upon reconsideration, and Hunter requested a hearing before an administrative law judge (ALJ). *Id.* at 16, 195-214, 215-

231, 238-241, 255-256.  Thereafter, Hunter filed an application for SSI benefits on January 22, 2018.  *Id.* at 16, 344; R 14, PageID #: 1795.

The ALJ determined that "both applications share an overlapping period based upon the same medical evidence of record," and joined the two applications at the hearing level.  (R. 9, tr., at 16).  The ALJ held the consolidated hearing on February 27, 2018.  *Id.* at 52-122.  Hunter appeared at the hearing, was represented by counsel, and testified.  *Id.* at 54, 64-107.  A VE attended the hearing and provided testimony.  *Id.* at 55, 107-120.  On May 31, 2018, the ALJ issued the underlying decision and found Hunter was not disabled.  (R. 9, tr., at 16-29; *see generally* 20 C.F.R. §§ 404.1520(a) and 416.920(a)).  The ALJ noted a previous decision dated January 18, 2013, denying Hunter's February 2011 applications for DIB and SSI (R. 9, tr., at 16; *see generally* tr., at 170-182), and considered the matter in accordance with the Sixth Circuit's decision in *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997) and related precedent.  The ALJ concluded that "based upon medical evidence submitted after January 18, 2013, [that] the claimant's conditions have deteriorated."  *Id.* at 16.  Therefore the second ALJ further reduced the RFC assessed by the ALJ in the prior decision.  *Id.* at 16-17.

The Appeals Council denied Hunter's request for review, thus rendering the ALJ's decision the Commissioner's final decision.  (R. 9, tr., at 1-4).  Hunter now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing in this case.  Hunter presents two legal issues regarding the ALJ's assessment of VE testimony and claimant's residual functional capacity.  (R. 14, PageID #: 1796).

## II.  PERSONAL BACKGROUND INFORMATION

Hunter was born in 1970, and was 42 years old on the alleged disability onset date.  (R. 9, tr., at 64, 316).  Accordingly, he was considered a younger individual age 18-44 for Social Security purposes.  *See* 20 C.F.R. §§ 404.1563, 416.963.  Hunter has at least a high school education and is able to communicate in English.  (R. 9, tr., at 123, 349, 351).  He had past work as a sexton at a church and as a gate guard.  (R. 9, tr., at 108-109).

## III.  RELEVANT MEDICAL EVIDENCE[1]

Disputed issues will be discussed as they arise in Hunter's brief alleging error by the ALJ.  As stated above, Hunter filed applications for a period of disability and DIB on May 23, 2016, and an application for SSI benefits on January 22, 2018.  (R. 9, tr., at 16, 316-322, 344).  Hunter listed his physical or mental conditions that limit his ability to work as: "colon cancer continued testing, depression, bipolar, heart failure, high blood pressure, s/p left knee surgery, bilateral knee arthritis."  *Id.* at 350.

On July 21, 2016, Hunter presented for a consultative psychological evaluation with Mark D. Hammerly, Ph.D.  (R. 9, tr., at 478-487).  Dr. Hammerly conducted a 45-minute clinical interview, and conducted no psychological testing.  *Id.* at 478.  When asked why he was applying for disability, Hunter responded that he had heart trouble and sleep apnea, and his depression started when he got colon cancer and a divorce.  *Id.* at 479.  Hunter reported that he had been in counseling for a year when he was prescribed Xanax, stopped taking it after a month, but

---

[1] The summary of relevant medical evidence is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

3

continued with counseling for another year. *Id.* at 481. He was hospitalized for two weeks, around the time of his divorce four years ago. *Id.*

Claimant reported sleep difficulties, poor appetite, and a depressed and helpless mood. (R. 9, tr., at 481). He is able to drive and perform errands for his aunt. *Id.* He reported doing some household chores, including cleaning dishes, cooking and light housecleaning. *Id.* Dr. Hammerly reported that Hunter's conversation was normal and his thought processes seemed to be coherent, goal-directed and logical. *Id.* at 482. Claimant's mood was downcast, his affect was constricted, and he expressed feelings of helplessness, but not worthlessness or hopelessness. *Id.* "Overall, the claimant related in a businesslike and calm manner." *Id.* The psychologist noted no signs of anxiety, agoraphobia, paranoia, hallucinations, delusions or other somatic concerns. *Id.*

Dr. Hammerly indicated that Hunter was alert and oriented to person, place, date, and situation, and he assessed claimant's mental control, concentration and memory to be grossly intact. (R. 9, tr., at 482-483). His level of academic knowledge was estimated to be borderline; and social planning and judgment was somewhat deficient but estimated as borderline. *Id.* at 483. He was classified as DSM-IV-TR 296.90, Mood Disorder, NOS. *Id.* at 484. Dr. Hammerly stated that claimant thought the cause of his mood disorder was secondary to his current medical issues. *Id.* The psychologist found that his symptoms "do not currently meet full criteria for differential diagnosis of any specific mood episode." *Id.* Dr. Hammerly described claimant's prognosis as "fair," if he follows the prescribed medical and psychological regimen, but indicated that his depression is reactive, secondary to his physical medical symptoms. *Id.* at 485.

4

Dr. Hammerly's functional assessment did not include testing regarding claimant's abilities and limitations in understanding, remembering, and carrying out instructions, but noted that claimant performed below the average range of ability during the mental status exam. (R. 9, tr., at 485). The psychologist estimated Borderline Intellectual Functioning, but stated that standardized testing would be necessary for a complete diagnosis. *Id.* Regarding claimant's abilities and limitations in attending to and completing tasks, the psychologist stated his functional abilities for ADLs were grossly normal, and he had no real problems in tasks requiring significant concentration, persistence and pace. *Id.* at 486. The psychologist indicated he might have some trouble with depression or mood symptoms affecting relations with coworkers or supervisors while readjusting to work. *Id.* Although Hunter did not report a previous pattern of inability to adjust to workplace demands, the psychologist noted that was prior to the onset of his depression and medical issues. *Id.* Dr. Hammerly expected that claimant might respond with decreased effectiveness to ordinary workplace pressures, given his current condition(s). *Id.*

State agency reviewing psychologist, Karla Delcour, Ph.D., determined on August 9, 2016, that a medically determinable impairment was present that does not precisely satisfy the diagnostic criteria for Listing 12.04 (Affective Disorders). (R. 9, tr., at 204 (psychiatric review technique, "PRT")). Under the "B" criteria for the Listing, Dr. Delcour assessed moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no restrictions of activities of daily living. *Id.* The psychologist noted that claimant had been diagnosed with mood disorder, major depression, and bipolar. *Id.* Dr. Delcour examined the previous ALJ's 2014 mental residual functional capacity (RFC) assessment, and found that subsequent medical evidence showed new and material changes. *Id.*

5

at 205. As such, he did not adopt the previous RFC because claimant's severity and limitations had changed. *Id.*

Dr. Delcour also completed a mental RFC assessment and found that Hunter had no limitations in understanding or memory, or with sustained concentration or persistence. (R. 9, tr., at 209-210). Dr. Delcour found that Hunter was moderately limited in his ability to interact appropriately with the general public, and in his ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* The psychologist indicated that claimant's symptoms are worsened by stressors; claimant reported feelings of helplessness; criticism from supervisors may be difficult for him and heighten his symptoms; claimant has a past history of mood swings and aggressive behavior with people and would benefit from superficial contact with the public, coworkers, and supervisors. *Id.* Dr. Delcour also assessed that Hunter was moderately limited in his ability to respond appropriately to changes in the work setting. *Id.* at 210. The psychologist noted that claimant's worsening symptoms would likely cause difficulty adapting to changes in the workplace and he would benefit from a more static work environment. *Id.*

On August 12, 2016, Hunter had a physical consultative examination conducted by internist Ryan O. Lakin, M.D. (R. 9, tr., at 493-495). Hunter had a history of poor controlled hypertension, left ventricular heart failure, congestive heart disease, asthma, sleep apnea, bipolar disorder, bilateral knee arthritis, and a history of colon cancer. *Id.* at 493. As for then current activity level, claimant reported: "extreme exercise intolerance," with shortness of breath upon minimal exertion and difficulty carrying groceries or lifting a small child; he could bathe, dress himself, and drive, but had difficulty walking through a shopping mall or sitting through a

6

movie; he could stand for ten minutes before needing a break and could climb only five stairs. *Id.*

Dr. Lakin found Hunter to be normal on physical examination, except that range of motion for both knees was decreased, with mild pain upon knee flexion and positive crepitus for both knees. (R. 9, tr., at 494-495, 496-499). Range of motion was normal in claimant's shoulders, elbows, wrists, hands and fingers, as well as his hips and ankles. *Id.* Fine and gross manipulation were normal. *Id.* at 495. Hunter had full strength in both arms and legs, and his gait was normal. *Id.* Speech, affect, mood and thought processes were all normal. *Id.*

Dr. Lakin diagnosed Hunter with hypertension, heart failure, asthma, edema (ankles), psychiatric illness, bilateral knee pain, and sleep apnea. *Id.* at 495. The doctor believed claimant could lift and carry up to ten pounds frequently and twenty pounds occasionally. *Id.* Hunter is capable of sitting continuously with regular breaks, and standing and walking occasionally with regular breaks. *Id.* The doctor opined that claimant's activities of daily living are moderately affected and travel for long distances would be difficult. *Id.*

On August 16, 2016, state agency reviewing physician Lynne Torello, M.D., prepared a physical RFC assessment. (R. 9, tr., at 206-208). Dr. Torello examined and did not adopt previous ALJ's 2014 RFC, after finding that subsequent medical evidence showed new and material changes. *Id.* at 208. The doctor determined Hunter could perform light work, with the ability to stand or walk about six hours and sit for six hours, of an eight-hour workday. *Id.* at 206-207. Claimant's ability to push or pull is otherwise unlimited. *Id.* The doctor stated that Hunter can occasionally climb ramps or stairs, and can never climb ladders, ropes, or scaffolds. *Id.* at 207. He can frequently stoop and occasionally kneel, crouch, or crawl. *Id.* These postural

7

limitations are due to bilateral knee pain and limited range of motion in his knees. *Id.* Dr. Torello opined that Hunter should avoid concentrated exposure to humidity and fumes, odors, dusts, gases, and poor ventilation; and avoid all exposure to hazards, such as machinery and heights. *Id.* at 208. These environmental limitations were due to a history of shortness of breath, chest pain, borderline congestive heart failure and asthma. *Id.*

On reconsideration dated December 12, 2016, state agency reviewing physician Gerald Klyop, M.D. concurred with Dr. Torello's physical RFC. (R. 9, tr., at 223-225).

On reconsideration dated December 9, 2016, state agency reviewing psychologist, Tonnie Hoyle, Psy.D., determined that a medically determinable impairment was present that does not precisely satisfy the diagnostic criteria for Listing 12.04 (Affective Disorders). (R. 9, tr., at 221 (PRT)). Under the "B" criteria for the Listing, Dr. Hoyle assessed moderate difficulties in maintaining social functioning, concentration, persistence, or pace; and no restrictions of activities of daily living. *Id.* Dr. Hoyle considered but did not adopt the previous ALJ's 2014 RFC, and agreed that the new medical evidence showed material changes concerning claimant's severity and limitations. *Id.* at 221-222.

Dr. Hoyle also completed a mental RFC assessment and found that Hunter had no limitations in understanding or memory and in sustained concentration or persistence. (R. 9, tr., at 225-227). Dr. Hoyle concurred in Dr. Delcour's assessment of claimant's social interaction and adaptation limitations. *Id.* at 226-227.

## IV. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the May 31, 2018, decision:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.

2. The claimant has not engaged in substantial gainful activity since January 19, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq).*

3. The claimant has the following severe impairments: hypertension, congestive heart failure, pericarditis, non-rheumatic mitral valve insufficiency, asthma, depression, anxiety, arthritis in the knees (bilateral), obesity, degenerative disc disease at L4-L5, borderline intellectual functioning (BIF) (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. He can frequently stoop, occasionally kneel, crouch, [or] crawl, and occasionally operate foot controls with the left [foot]. He can frequently handle, finger, and feel with the dominant left [hand]. He is limited to only occasional exposure to concentrated levels of humidity, fumes, odors, dusts, gases and poor ventilation, and should never be exposed to hazards such as moving machinery and unprotected heights. The claimant is further limited to: simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements involving only work-related decisions with few, if any, work place changes; tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained. The claimant can respond appropriately to occasional interaction with supervisors, co-workers, and the general public.

6. The claimant is capable of performing past relevant work as sexton. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 19, 2013, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(R. 9, tr., at 19, 20, 23, 27, 29).

## V.  DISABILITY STANDARD

A claimant is entitled to receive DIB or SSI benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. §§ 404.1505(a), 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(i).  Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id.* § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id.* § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  *Id.* § 404.1520(a)(4)(v).
>
> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

10

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971)*.* "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence. *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich. Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

11

VII. ANALYSIS

Hunter presents the following legal issues for the court's review, verbatim:

1. Does VE testimony in prior ALJ decision regarding description and classification of past relevant work, bind subsequent ALJ in new applications precluding obtaining, using and relying on subsequent contradictory VE testimony as substantial evidence at Step 4 Sequential Evaluation to find Plaintiff capable of performing past relevant work as a sexton (Finding No. 6, Tr. 27)?

2. Did ALJ fail to consider the combination of all of Plaintiff's impairments, severe and non-severe, in determining a proper residual functional capacity/ mental residual functional capacity set forth in Finding No. 5, Tr. 23, thereby improperly proffering VE an inaccurate hypothetical creating VE testimony on Alternative Work, Step 5 Sequential Evaluation not supported by substantial evidence?

(R. 14, PageID #: 1796).

## A. Past Relevant Work

Hunter argues that the ALJ erred by obtaining new testimony from the VE reclassifying his past relevant work, which claimant contends had been adjudicated in the prior hearing. (R. 14, PageID #: 1814-1817).

In *Dennard*, the Sixth Circuit held that a second ALJ was precluded from reconsidering whether the plaintiff could perform his past relevant work. *Drummond v. Commissioner*, 126 F.3d 837, 842 (6th Cir. 1997) (citing *Dennard v. Secretary*, HHS, 907 F.2d 598, 600 (6th Cir. 1990) (per curiam)). The *Drummond* court stated *res judicata* applied to the Commissioner, and noted the Commissioner's burden to prove changed circumstances to avoid its application. *Drummond*, 126 F.3d at 842-843. The record in *Drummond* indicated that plaintiff's condition did not improve but worsened, leading the court to rule:

> It is apparent that substantial evidence was not introduced that Drummond's condition improved significantly between the two hearing dates. As a result, we

12

conclude that the second ALJ was bound by the determination that Drummond
retained the RFC for sedentary work.

*Drummond*, 126 F.3d at 843.

Here the ALJ recognized that, under *Drummond*, an ALJ is bound by the findings of the previous ALJ absent evidence of improvement or deterioration of the claimant's condition. (R. 9, tr., at 16). The ALJ found that, based on medical evidence submitted after the earlier decision, the claimant's conditions had deteriorated, and therefore the RFC assessed was further reduced from the RFC in the prior decision. *Id.* at 16-17.

Concerning the claimant's past relevant work (PRW), however, the ALJ stated that she had considered claimant's PRW pursuant to *Dennard* and AR 98-3(6), and determined:

> The prior decision characterized the claimant's [PRW] as a janitor and housekeeper and found the claimant could perform said [PRW]. Based upon additional information on the nature of the janitor job in that it was performed for a church, the current classification is that of a sexton occupation. This job performed from 2006 through 2011, meets the recency requirement as it was performed within 15 years of the current adjudication and within the date last insured.
>
> Despite new and material evidence, that warrants the current [RFC] described above the undersigned finds the claimant retains the ability to perform his [PRW] as a sexton, DOT 389.667-010, SVP 2, medium per the DOT and light as performed by the claimant. In comparing the claimant's [RFC] with the physical and mental demands of this work, based on the testimony of the vocational expert, the undersigned find that the claimant is able to perform it as actually performed.

(R. 9, tr., at 27).

The Commissioner now acknowledges that the ALJ's finding that claimant could return to his PRW as a sexton was erroneous, but argues that the error is harmless. (R. 16, PageID #: 1863-1864). The Commissioner argues it was harmless error because the ALJ's decision did not rest solely upon the finding that claimant could perform PRW as a sexton, and asserts the court

13

may affirm on another basis—the ALJ also made the alternative finding at Step Five that Hunter could perform several other jobs that exist in the national economy. *Id.* at 1864, citing R. 9, tr., at 28-29; *Davis v. Sec'y, HHS*, 915 F.2d 186, 188-189 (6th Cir. 1990); *see also Lagore v. Colvin*, No. 4:12CV2626, 2014 WL 1383339, at *17 (N.D. Ohio Apr. 8, 2014) (harmless error if the ALJ erred by finding claimant could return to PRW, because the ALJ proceeded to Step Five and determined claimant could perform a significant number of jobs in the national economy); *Jordan v. Colvin*, No. 3:12CV412, 2013 WL 4509705, at *9 (E.D. Tenn. Aug. 23, 2013) (same); *Stull v. Astrue*, No. 3:10CV693, 2011 WL 830633, at *6 (N.D. Ohio Jan. 18, 2011), adopted by 2011 WL 830541 (N.D. Ohio Mar. 3, 2011) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008)) (same).

Following the above precedent, however, the court must consider the claimant's argument that the Step Five finding was erroneous, before determining whether the ALJ's error at Step Four was harmless.

## B.  Step Five RFC

Hunter contends that the ALJ erred by failing to consider the combination of Plaintiff's severe and non-severe impairments when determining the RFC and by proffering an inaccurate hypothetical to the VE. (R. 14, PageID #: 1796, 1819-1828). The claimant argues that "the record supports at a minimum a sit/stand option, or limitation that Plaintiff can only stand/walk up to 2/8 hours per workday, and not within light exertion contrary to the ALJ's finding." *Id.* at 1826. The Commissioner responds that, although claimant discusses several impairments at length, he does not cite a treating opinion supporting greater limitations than the ALJ found. (R. 16, PageID #: 1853).

14

The claimant's RFC is what the claimant can still do despite his limitations. *Bowman v. Commissioner*, 683 Fed. Appx 367, 371 (6th Cir. 2017); 20 C.F.R. § 404.1545(a)(1). The ALJ has the responsibility for reviewing all the evidence, including every medical opinion, when making this determination. 20 C.F.R. §§ 404.1527(c), (e)(2). Although the ALJ reviews and considers all the evidence before her, the responsibility for assessing the claimant's RFC rests with the ALJ. 20 C.F.R. § 404.1546(c). This decision is an administrative, not a medical, determination. *Lumpkin v. Colvin*, 112 F. Supp. 3d 1169, 1172 (D. Colo. 2015). "The ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the evidence and draw [her] own inferences." *Simpson v. Commissioner*, No. 08-3651, 2009 WL 2628355, at *12 (6th Cir. Aug. 27, 2009); *see also Lumpkin*, 112 F. Supp. 3d at 1172.

The ALJ's Step Five determination—that based on the claimant's RFC, as well as age, education, and work experience, the claimant can make an adjustment to other work—must be supported by substantial evidence. "This kind of '[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question…." *Ealy v. Commissioner*, 594 F.3d 504, 512-13 (6th Cir. 2010). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Id.* at 516; *see also Pasco v. Commissioner of Social Sec.*, No. 03-4358, 2005 WL 1506343, at *14 (6th Cir. June 23, 2005); *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir. 1987) (citing cases). But the hypothetical questions need only incorporate those limitations which the ALJ has accepted as credible. *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *9 (6th Cir. March 15,

15

2011); *Casey v. Secretary, HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993) (per curiam). Further, the hypothetical questions need only reference the claimant's limitations, and need not list the claimant's medical conditions. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (citing *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001)).

Claimant contends that the ALJ's hypothetical questions posed to the VE during the administrative hearing failed to include limitations for a sit/stand option, or that he can only stand or walk up to two hours of an 8 hours per workday. (R. 14, PageID #: 1826). The ALJ, however, is only required to incorporate those limitations accepted as credible, and Hunter does not identify any medical opinion supporting these alleged limitations. Although the claimant complains that the ALJ gave only partial weight to Dr. Lakin's report, *id.* at 1823-1824, Dr. Lakin did not opine the specific limitations that Hunter believes the ALJ should have adopted. Rather, Dr. Lakin stated, "[t]he claimant can sit continuously with regular breaks, stand and walk occasionally with regular breaks." (R. 9, tr., at 495). The doctor did not specify a requirement for a sit/stand option, nor did he specifically limit Hunter to only two hours of standing or walking per workday. *Id.*

In addition, the doctor determined that Hunter could lift and carry up to ten pounds frequently, and up to twenty pounds occasionally (R. 9, tr., at 495), which matches the light level of exertion. *See* 20 CFR §§ 404.1567(b) and 416.967(b). The ALJ also found that Dr. Lakin's opinion concerning occasional standing and walking was "not entirely consistent with the medical evidence of record." (R. 9, tr., at 25 (concluding further "they seemed based on claimant's [self-reported limitations,]" whereas claimant's physical examination showed "normal gait," "reciprocating heel-to-toe and tandem walking with no difficulty," and the ability to stand

16

"on one leg at a time")). The ALJ also determined that claimant's ability to perform all the requirements of light work had been impeded by his limitations,[2] and the VE testified as to six representative occupations that claimant could perform at the light or sedentary level. (R. 9, tr., at 28-29).[3]

Hunter does not identify additional limitations, supported by opinion evidence of record, which the ALJ should have included in the RFC. For example, while the claimant argues that the ALJ minimized his severe kidney disease (R. 14, PageID #: 1819-1820) and contends that the decision underplays his cardiovascular condition (*id.* at 1821), he does not point to additional limitations opined by a medical source based on those conditions. *See, e.g.*, *Webb*, 368 F.3d at 633 (citing *Foster*, 279 F.3d at 356) (hypothetical questions need only reference claimant's limitations, not his medical conditions).

The ALJ supported the RFC assessment with an extended discussion of the medical evidence of record, acknowledging that claimant's heart and knee conditions had worsened, warranting additional limitations from the earlier ALJ opinion; and further discussed claimant's

---

[2] Hunter claims that the ALJ found that he "can do a full exertional range of light work," (R. 14, PageID #: 1824), but this is clearly incorrect. *See* R. 9, tr., at 23 (listing multiple exceptions to ability to fully perform light work), 28 (claimant's ability to perform all or substantially of the requirements of light work has been impeded by his limitations).

[3] The VE testified that a hypothetical person with claimant's age, education, work experience, and RFC could perform the following representative jobs in the national economy: (1) Small products assembler at light exertion with 60,000 such jobs; (2) Palletizer at light exertion with 75,000 such jobs; (3) Sealer at light exertion with 20,000 such jobs; (4) Finisher at sedentary exertion with 25,000 such jobs; (5) Sealer at sedentary exertion with 20,000 such jobs; and (6) Finisher at sedentary exertion with 25,000 such jobs. (R. 9, tr., at 109, 112-117).

hypertension, congestive heart failure, asthma, arthritis, and obesity.[4] (R. 9, tr., at 23-27). The ALJ also recognized that Hunter has a moderate limitation concerning interacting with others, caused by his depression and mood symptoms, which could be expected to decrease his effectiveness in the workplace. (R. 9, tr., at 22, 27). Claimant's mental conditions and physical ailments, as the ALJ determined, would affect his response to workplace pressures. *Id.* at 27. The ALJ's RFC accounted for these conditions with the following moderate limitations: limiting claimant to "simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements involving only work-related decisions with few, if any, work place changes;" determining claimant was capable of "tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting[;]" concluding "[a]ny necessary changes need to occur infrequently, and be adequately and easily explained[;]" and finding "claimant can respond appropriately to occasional interaction with supervisors, co-workers, and the general public." *Id.* at 23.

Further, the ALJ reasonably concluded, Hunter's "mental conditions and physical ailments combined would affect his response to ordinary workplace pressures and his ability to meet the expectations of fast-paced production work settings. Moderate limitations of function, derived from the claimant's mental impairments, support the remaining provisions in the residual functional capacity assessed." *Id.* at 27. The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of

---

[4] On his application, Hunter did not list kidney disease as among the physical conditions that limit his ability to work. (R. 9, tr., at 350; *see also id.* at 493, 495). The ALJ determined that Hunter's chronic kidney disease remained stable. (R. 9, tr., at 20).

18

fact in dispute differently, or substantial evidence also supports the opposite conclusion. *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545. Although the claimant extensively discusses the evidence which he believes compels a different conclusion than that reached by the ALJ, this court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Wright*, 321 F.3d at 614; *Garner*, 745 F.2d at 387. Nor does it alter the conclusion that the ALJ's RFC is supported by substantial evidence.

The court finds that the ALJ properly considered the combined impact of claimant's physical and mental impairments in the RFC assessment; and, therefore did not err when posing corresponding hypothetical questions to the VE who identified a substantial number of other jobs, aside from claimant's past relevant work, that claimant could adjust to in the national economy. *See* n. 3, *supra.* Consequently, returning to claimant's first alleged error regarding his ability to do past relevant work, the court finds it harmless.

## VIII. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on substantial evidence in the record, as outlined in his findings and supported by medical evidence. Accordingly, that decision should be affirmed.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date: July 7, 2020

19

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72(a); LR 72.3(a). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).